E-FILED

Monday, 16 August, 2010  11:11:44 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROBERT I. SHERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-3086 |
| | ) | |
| PATRICK QUINN, in his official | ) | |
| capacity as Governor of the State of | ) | |
| Illinois, WARREN RIBLEY, in his | ) | |
| official capacity as Director, Illinois | ) | |
| Department of Commerce and | ) | |
| Economic Opportunity, and DANIEL | ) | |
| W. HYNES, in his official capacity as | ) | |
| Comptroller of the State of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

This cause is before the Court on Defendants Patrick Quinn's, Warren Ribley's, and Daniel W. Hynes' Motion to Dismiss (Motion) (d/e 9) and Defendants' Memorandum of Law in Support of Motion to Dismiss (d/e 10).  Plaintiff Robert I. Sherman has filed his Memorandum of Law in Opposition to Motion to Dismiss (Response) (d/e 11).  This matter is fully briefed and ripe for adjudication.  For the reasons described below, the Motion is granted.

1

## FACTS

According to the Complaint for Preliminary and Permanent Injunction (Complaint) (d/e 1), Plaintiff is a United States citizen and a resident of the State of Illinois who pays taxes to the State of Illinois.  Defendant Patrick Quinn is the Governor of the State of Illinois, and Defendant Warren Ribley is the Director of the Illinois Department of Commerce and Economic Opportunity (DCEO), which is an agency of the State of Illinois. Defendant Daniel W. Hynes is the Comptroller of the State of Illinois.

On July 13, 2009, Defendant Quinn signed into law a capital act known as Public Act 96-39, or Illinois Jobs Now! (the Act), which authorized "a large number of expenditures for infrastructure improvements and other public and private purposes."  Complaint, ¶ 6.  Among these expenditures were 155 grants to "houses of worship, religious ministries, parochial schools, other religious institutions, private organizations that explicitly exclude atheists, and other private organizations engaging in advocacy not limited to legitimate public purposes."  Complaint, ¶ 7.  The grants are designed to fund capital and infrastructure improvements, and new construction.  The Act was also designed to provide jobs to out-of-work Illinois residents.  Exhibits B and C to the Complaint are lists of the

allocations of funds that Plaintiff finds objectionable.  Among these are a $50,000 grant for capital improvements at Muslim Women's Resource Center; a $60,000 grant to the Jewish Federation of Chicago; a $25,000 grant for renovations at St. Richard Catholic School; and a $100,000 grant for infrastructure improvements at Lawndale Christian Reformed Church and School.  See Complaint, Ex. B, Line Items 4, 12, 20, & 96.  The Act also permits discretionary spending, and contains grants to various organizations without specifying whether the money is to be used for secular purposes, religious purposes, or some combination thereof.

The single largest grant in the Act is a $2.23 billion appropriation "to the Office of the Governor to be expended, in the discretion of and as determined by the Governor and upon written direction of the Governor to the Comptroller, for the costs (including operational expenses, awards, grants, and permanent improvements) of community-based human services providers and agencies that are associated with programs and other services that provide assistance for those in need." Complaint, Ex. A, Act, Art. XV, § 5, p. 990.[1]  Plaintiff alleges that the "broad discretionary spending authority" provided to Defendant Quinn under this provision of the Act

---

[1] The Court refers to page numbers assigned by the Court's electronic filing system.

fails to provide Plaintiff "with any meaningful way to monitor or review such expenditures to determine whether they comport with the Establishment Clause or to seek a legal remedy to prevent such expenditures that violate the Establishment Clause of the First Amendment." <u>Complaint</u>, ¶ 14.

Plaintiff filed this lawsuit on April 7, 2010. First, he alleges pursuant to 42 U.S.C. §§ 1983 and 1988 that Defendants, by enacting and administrating the Act, violated his First and Fourteenth Amendment rights under the U.S. Constitution. Plaintiff also brings claims under provisions of the Constitution of the State of Illinois, including: (1) Article I, § 3; (2) Article VIII § 1(a); (3) Article VIII, § 2(b); and (4) Article X, § 3. Plaintiff sues Defendants in their official capacities, and requests that the Court enjoin administration of the Act. Plaintiff brings Counts I, II, and III against Quinn; Counts IV and V against Ribley; and Counts VI and VII against Defendant Hynes.

<u>LEGAL STANDARDS</u>

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. <u>Fed. R. Civ. P.</u> 12(b)(6). The Federal Rules require only "a short and plain

4

statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1).   While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).   The Seventh Circuit has held that a claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests.  George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).   Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC, 499 F.3d 663, 667 (7th Cir. 2007).

For purposes of a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in a complaint.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak

<u>Brook</u>, 77 F.3d 177, 178 (7th Cir. 1996).  The Court views the facts in the light most favorable to the non-moving party, in this case, Plaintiff.

ANALYSIS

Defendants present several arguments for dismissal.  The Court addresses each argument in turn.

I.    ELEVENTH AMENDMENT BAR

Defendants first argue that Counts II, III, V, and VI are barred by the Eleventh Amendment to the U.S. Constitution.  Plaintiff "elects not to contest the Defendants' [M]otion with respect to these [C]ounts," and concedes that these claims are barred by the Eleventh Amendment. <u>Response</u>, ¶ 1.  Therefore, Defendants' Motion is granted with respect to Counts II, III, V, and VI of the Complaint.

II.   LACK OF STANDING

Defendants next argue that Plaintiff lacks standing to raise the remainder of his claims, with the exception of the portions of Counts I, IV and VI that allege that the Act is facially unconstitutional.  This argument, in essence, is one of lack of subject-matter jurisdiction, and is properly analyzed under Federal Rule of Civil Procedure 12(b)(1).

Dismissal under Rule 12(b)(1) is proper if the Court lacks subject-

matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The U.S. Constitution limits the federal courts to adjudicating actual cases or controversies.  U.S. Const. art. III, § 2; see St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 626 (7th Cir. 2007).  An integral part of the case-or-controversy requirement is the doctrine of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009).  If a plaintiff does not have standing to bring suit, the Court lacks subject-matter jurisdiction, and the case must be dismissed.

As a general rule, federal taxpayers qua taxpayers lack standing in federal court.  Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 487 (1923); Freedom From Religion Found., Inc. v. Nicholson, 536 F.3d 730 (7th Cir. 2008).  This rule applies with equal force to state taxpayers seeking "to challenge state tax or spending decisions simply by virtue of their status as taxpayers."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 346 (2006); see Laskowski v. Spellings, 546 F.3d 822, 825 (7th Cir. 2008); Hinrichs v. Speaker of House of Representatives of Indiana Gen. Assembly, 506 F.3d 584, 596-97 (7th Cir. 2007).  In Flast v. Cohen, the U.S. Supreme Court created an exception to this general rule and held that a federal taxpayer may have standing to bring a challenge under the First

Amendment's Establishment Clause under the following circumstances:

> First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

Flast, 392 U.S. 83, 102-03 (1968). This exception also applies to state taxpayers challenging state expenditures under the Establishment Clause. Hinrichs, 506 F.3d at 598. Due to the Flast exception's limited nature, federal courts construe it narrowly. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 481 (1982); Nicholson, 536 F.3d at 737.

Defendants here argue that Plaintiff lacks standing to bring the portions of Counts I, IV, and VI that challenge the $2.23 billion grant because that grant gives Defendant Quinn, as executive of the State of Illinois, the discretion to allocate funds to "community-based human

services providers and agencies that are associated with programs and other services that provide assistance for those in need." Complaint, Ex. A, Act, Art. XV, § 5, p. 990.  Therefore, the argument goes, Plaintiff does not challenge a specific action of the Illinois General Assembly, but instead challenges executive discretion.

In Hein v. Freedom From Religion Foundation, Inc., the U.S. Supreme Court reiterated the narrowness of the Flast exception, rejecting the plaintiffs' Establishment Clause claim because they failed to challenge a "specific congressional action or appropriation . . . ." Hein, 551 U.S. 587, 605 (2007).  Instead, the plaintiffs challenged discretionary expenditures by the Executive Branch from a general congressional appropriation of funds; the program in question was former President George W. Bush's Faith Based and Community Initiatives.  Id.  "These appropriations did not expressly authorize, direct, or even mention the expenditures of which [plaintiffs] complain" and "were not made pursuant to any Act of Congress."  Id.  In short, the plaintiffs' claim failed because they were challenging acts of executive discretion rather than specific congressional appropriations.  Id.; see Laskowski, 546 F.3d at 826 (noting that the Flast exception is invoked "[o]nly when a taxpayer challenges a specific

congressional appropriation--not a government program or activity funded from general appropriations . . . .").

Similarly, in <u>Nicholson</u>, the U.S. Court of Appeals for the Seventh Circuit addressed the plaintiff's argument that <u>Hein</u> requires only "that taxpayers challenge the use of congressional appropriations that are authorized to fund a congressionally-established program."  536 F.3d at 740-41.  The plaintiff in <u>Nicholson</u> challenged funding for certain aspects of the Department of Veterans Affairs's Chaplain Service.  The funds in question were "used to develop a chaplaincy with a clinical focus, to create spiritual assessments, to provide pastoral care to outpatients, and generally to integrate spirituality/religion" into treatment programs for veterans.  <u>Id.</u> at 742.  The Seventh Circuit rejected this argument, finding that Congress had not mandated, required, or expressly authorized the expenditures in question because congressional appropriations to the VA did not require that funds be used to support the Chaplain Service.  <u>Id.</u> at 732, 741-42.

Plaintiff here argues that his case is not like <u>Hein</u> or <u>Nicholson</u>, but that it is more like <u>Bowen v. Kendrick</u>, 487 U.S. 589 (1988).  In <u>Kendrick</u>, the Supreme Court held that the plaintiffs had standing under <u>Flast</u> to mount an as-applied challenge to the federal Adolescent Family Life Act

10

(AFLA).  The purposes of the AFLA were to promote responsible adolescent sexual behavior, and to promote adoption as an alternative to abortion. <u>Kendrick</u>, 487 U.S. at 605.  Congress gave authority to the Secretary of Health and Human Services to determine what kinds of services grant recipients would provide, but Congress defined a list of "necessary services" eligible for funding.  <u>Id.</u> at 593-94.  While Congress did not require that religious services be provided under the AFLA's scheme, it specifically recognized and encouraged the role that religious institutions played in supplementing governmental action.  <u>Id.</u> at 595-96.  Congress also imposed requirements on the contents of applications for grants under the AFLA, and prohibited funds from being used for certain family planning services. <u>Id.</u> at 596-97.

The Court found that the plaintiffs had standing to challenge the AFLA because they challenged both "'a program of disbursement of funds pursuant to Congress' taxing and spending powers'" and "how the funds authorized by Congress [were] being disbursed *pursuant to the AFLA's statutory mandate*."  <u>Kendrick</u>, 487 U.S. at 619-20; <u>see</u> <u>Hein</u>, 551 U.S. at 606-07; <u>Nicholson</u>, 536 F.3d at 743-44.  As the <u>Hein</u> court noted in its discussion of <u>Kendrick</u>, the "AFLA not only expressly authorized and

appropriated specific funds for grantmaking, it also expressly contemplated that some of those moneys might go to projects involving religious groups." Hein, 551 U.S. at 607.  The Court held that there was "a sufficient nexus between the taxpayer's standing as a taxpayer and the congressional exercise of taxing and spending power, notwithstanding the role the Secretary [of Health and Human Services] plays in administering the [AFLA]," and, therefore, the plaintiff fell under Flast.  Kendrick, 487 U.S. at 620.

In this case, the Court agrees with Defendants.  Plaintiff here is not challenging the allocation of funds to community-based human services providers per se.  Instead, the crux of Plaintiff's allegations is that "the broad discretionary spending authority provided to Defendant Quinn" may result in grant money going to religious or sectarian institutions. Complaint, ¶ 14.  Plaintiff's argument that his case is like Kendrick is unavailing.  In Kendrick, Congress carefully defined the parameters of the AFLA, imposed specific criteria on grant applicants, and explicitly acknowledged and promoted the role of religious institutions in furthering the statutory mandate.  In this case, the Illinois General Assembly simply appropriated $2.23 billion for Defendant Quinn to distribute to "community-based human services providers and agencies that are

associated with programs and other services that provide assistance for those in need." Complaint, Ex. A, Act, Art. XV, § 5, p. 990.  Plaintiff does not challenge the specific appropriation, but instead argues that it may be administered in an unconstitutional fashion, the very argument the Seventh Circuit rejected in Nicholson.  See Nicholson, 536 F.3d at 740-41.

In short, Plaintiff has failed to establish the nexus between his status as a taxpayer and a specific legislative appropriation of funds, as required by Flast.  He does not have standing to challenge the $2.23 billion appropriation in the Act.  Accordingly, the Court grants Defendants' Motion with respect to those portions of Counts I, IV, and VI challenging the $2.23 billion appropriation.

III.  FAILURE TO STATE A CLAIM

Defendants next argue that Plaintiff's allegations are insufficient to mount as-applied and facial challenges to the portions of the Act described in Exhibits B and C.  The Court addresses each contention in turn.

A.  As-Applied Challenge

Defendants argue that Plaintiff cannot successfully mount an as-applied constitutional challenge to the 155 specific line items in Exhibit B and the 21 line items in Exhibit C to the Complaint because no grant

money has been given out.   Instead, Defendants argue, the Act merely appropriates funds to executive agencies for grants that can be made. Plaintiff, therefore, does not know whether the moneys will be used in a way that violates the Establishment Clause.   Additionally, Defendants point out that federal courts can only enjoin state officials to prevent *ongoing* violations of federal law.   See Verizon Maryland, Inc. v. Public Service Comm'n of Maryland, 535 U.S. 635 (2002); Ex parte Young, 209 U.S. 123 (1908). Here, because no funds have been disbursed, the Court is incapable of providing redress for Plaintiff's grievances.   Plaintiff concedes that the funds have not yet been disbursed, but argues that he still should be allowed to proceed because "the constitutional infirmity of the appropriation cannot be determined until after the funds are expended" and restitution is not an available remedy.   Response, ¶ 9.

Defendants are correct.   In Kendrick, the U.S. Supreme Court observed that in cases where the statute or provision in question has not been implemented, the plaintiff can only mount a facial challenge to the allegedly unconstitutional act.   Kendrick, 487 U.S. at 600 ; see Edwards v. Aguillard, 482 U.S. 578, 581 n.1 (1987) (holding Louisiana's Creationism Act facially violative of the Establishment Clause and observing that the

State had postponed implementing the law pending conclusion of the litigation); <u>Tilton v. Richardson</u>, 403 U.S. 672, 682 (1971) (noting that, although statute in question passed muster on its face, "[i]ndividual projects can be properly evaluated if and when challenges arise with respect to particular recipients . . . ."). In this case, although the Illinois General Assembly passed and Defendant Quinn signed the Act, Plaintiff is not challenging the Act as a whole. Instead, he is challenging specific grants provided for by the Act, spelled out in Exhibits B and C to the Complaint. None of the grants of which Plaintiff complains has been made and, therefore, he can not raise an as-applied challenge to them at this juncture.

Accordingly, the Court grants Defendants' Motion with respect to any as-applied challenges Plaintiff alleges in Counts I, IV, and VI of the Complaint.

B.    <u>Facial Challenge</u>

Defendants' final argument is that Plaintiff fails to adequately allege a facial challenge to the provisions of the Act described in Exhibits B and C to the Complaint.

To determine whether a statute facially violates the Establishment Clause, the Court utilizes the test articulated in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971).  To pass muster under the <u>Lemon</u> test, three things must be true: (1) the statute must have a "secular legislative purpose"; (2) the statute's "principal or primary effect . . . neither advances nor inhibits religion"; and (3) the statute "must not foster 'an excessive government entanglement with religion.'"  <u>Lemon</u>, 403 U.S. at 612-13 (quoting <u>Walz v. Tax Comm'n of City of N.Y.</u>, 397 U.S. 664, 674 (1970)); <u>see</u> <u>Kendrick</u>, 487 U.S. at 602.  The test is not rigid, however, and provides "no more than helpful signposts" to the Court.  <u>Hunt v. McNair</u>, 413 U.S. 734, 741 (1973); <u>see</u> <u>Van Orden v. Perry</u>, 545 U.S. 677, 685 (2005) (quoting <u>McNair</u> and questioning the continuing viability of the <u>Lemon</u> test); <u>Zelman v. Simmons-Harris</u>, 536 U.S. 639 (2002) (not applying the <u>Lemon</u> test); <u>Good News Club v. Milford Central School</u>, 533 U.S. 98 (2001) (not applying the <u>Lemon</u> test); <u>Tilton</u>, 403 U.S. at 677-78 ("[T]here is no single

16

constitutional caliper that can be used to measure the precise degree to which these three factors are present or absent.").

In <u>Tilton</u>, the U.S. Supreme Court held that a provision of federal law that granted church-related institutions of higher learning construction grants for buildings used for secular educational purposes did not violate the Establishment Clause.  <u>Tilton</u>, 403 U.S. at 674-75, 689.  The Court noted that Congress's statement of purpose articulated a secular objective and prohibited the schools for using the money for sectarian purposes, and that there was not excessive entanglement between church and state because the primary purpose of the church-related colleges and universities was not religious indoctrination, but academic instruction.  <u>Id.</u> at 685-86.  The Court also noted that the grants were designed to fund construction of new facilities and stated that the Court had historically "permitted church-related schools to receive government aid in the form of secular, neutral, or nonideological services, facilities, or materials that are supplied to all students regardless of the affiliation of the school that they attend."  <u>Id.</u> at 687; <u>see</u> <u>Roemer v. Bd. of Public Works of Maryland</u>, 426 U.S. 736 (1976) (finding that state-funded grants to private colleges did not violate the Establishment Clause, in part because use of the grants was restricted to

non-sectarian purposes).

The Supreme Court struck down a state law that provided maintenance and repair grants to exclusively nonpublic schools and tuition reimbursement grants to the parents of children attending private elementary and secondary schools.  <u>Committee for Public Ed. & Religious Liberty v. Nyquist</u>, 413 U.S. 756, 794 (1973).  However, the Court upheld a similar state law that made funding available to all schools, irrespective of their public or private character.  <u>Zelman</u>, 536 U.S. at 661.

Here, Plaintiff alleges that the grants described in Exhibits B and C to the Complaint facially violate the Establishment Clause.  The Court disagrees, even viewing the Complaint in the light most favorable to Plaintiff.  The Court must look to the face of the Act itself to determine whether Plaintiff's claims are meritorious.  "In the event of a conflict between a complaint proper and an attachment thereto that forms the basis of the plaintiff's claims, the attachment prevails . . . ."  <u>London v. RBS Citizens, N.A.</u>, 600 F.3d 742, 747 n.5 (7th Cir. 2010).  Insomuch as Plaintiff's allegations are inconsistent with the provisions of the Act itself, the Act prevails.

Applying the first <u>Lemon</u> factor, the purpose of the Act and its several

provisions is to fund capital improvements and construction, and to create jobs in the State of Illinois.  This is unmistakably a legitimate, secular legislative purpose, and Plaintiff does not allege otherwise in the Complaint, or argue otherwise in his Response.

Instead, Plaintiff challenges the allocation of grant money to certain organizations.  However, turning to the second step of the <u>Lemon</u> test, the provisions Plaintiff challenges, on their faces, do not have the primary effect either of advancing or inhibiting religion.  For example, the provision allocating $100,000 to the DCEO for distribution to the Boys & Girls Club of Mississippi Valley to construct a teen center is religion neutral.  <u>See Complaint</u>, Ex. A, <u>Act</u>, Art. IX, § 20, p. 41.  The Act in question also makes funds available to renovate facilities for a farmers' market in the City of Morrison.  <u>Complaint</u>, Ex. A, <u>Act</u>, Art IV, § 30, p. 42.  Plaintiff quotes the Boys & Girls Club's membership statement in the Response to support his argument that the appropriation runs afoul of <u>Lemon</u>.  However, this information does not appear on the face of the statute.  While such a statement may support an as-applied challenge if and when such a challenge is appropriate, it does not support a facial challenge.

Finally, Plaintiff fails to adequately allege or demonstrate that the

provisions of the Act at issue foster excessive entanglement between church and state.  For example, the Court fails to see how a $5,000,000 grant to make upgrades to campsites on its face poses a risk of excessive entanglement between church and state.  See Complaint, Ex. C, Item 2.

Other provisions of the Act specifically mention religious organizations, such as a $100,000 grant to Lawndale Christian Reformed Church and School for infrastructure.  Complaint, Ex. B, Line Item 96.  The provision does not describe what types of infrastructure projects will be undertaken and is ambiguous.  The Supreme Court has routinely upheld similar laws that provided construction money to private institutions, including church-related colleges and universities, when such money is to be used only for secular purposes.  See Tilton, 403 U.S. at 687; Roemer, 426 U.S. at 765-67.  Plaintiff's own allegations reveal Defendant Quinn's commitment to ensure that grant money is utilized only for secular purposes.  Complaint, ¶ 13.  Even viewing the facts in the light most favorable to Plaintiff, he has failed to state a claim that certain provisions of the Act facially violate the Establishment Clause.

The Court notes that there is always the potential that the grant money described in the Act would be used in a manner that violates the

Establishment Clause.  However, the provisions identified in Exhibits B and C to the Complaint are not invalid on their faces.  If, after the money in these provisions has been disbursed, Plaintiff discovers that something potentially unconstitutional is underfoot, he may raise an as-applied challenge to the provisions.  See Tilton, 403 U.S. at 682.

Accordingly, the Court grants Defendants' Motion with respect to Plaintiff's facial challenges in Counts I, IV, and VI.

<u>CONCLUSION</u>

As a final matter, Plaintiff seeks leave, should the Court find in Defendants' favor, to file an amended complaint.  The Court has held that Plaintiff does not have standing to challenge the $2.23 billion grant to Defendant Quinn's Office, and that any as-applied challenge Plaintiff could mount to the Act is premature.   Finally, the Court determined that Plaintiff's facial challenge to the Act fails because of the language of the Act itself.  In such circumstances, allowing Plaintiff to amend his Complaint would be futile because his allegations would not survive a motion to dismiss.  See London, 600 F.3d at 747 n.5; Vargas-Harrison v. Racine Unified School Dist., 272 F.3d 964, 975 (7th Cir. 2001).  Accordingly, Plaintiff's request is denied.

THEREFORE, Defendants' Motion to Dismiss (d/e 9) is GRANTED.

IT IS THEREFORE SO ORDERED.

ENTERED this 16th day of August, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE